## UNITED STATES v. RANES. *

### No. 6332.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1931.

*Rehearing denied May 11, 1931.

George J. Hatfield, U. S. Atty., and Hubert Wyckoff, Jr., Asst. U. S. Atty., both of San Francisco, Cal.

Frederic C. Benner and ˙Alvin Gerlack, both of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This was an action on a converted policy of war-risk insurance in the sum of $7,000. After defining total and permanent disability, paragraph 11 of the Conditions, Benefits, and Privileges attached to the policy provides:

"The total permanent disability benefits may relate back to a date not exceeding six months prior to receipt of due proof of such total permanent disability, and any premiums paid after receipt of due proof of total permanent disability, and within the six months, shall be refunded without interest."

The complaint contained no direct averment that due proof of total and permanent disability had been furnished to the Director of the United States Veterans' Bureau, but did aver:

"That plaintiff, on January 22, 1929, made application to the defendant, through its Veterans' Bureau and the Director thereof, for the payment of said insurance for total and permanent disability and said Veterans' Bureau, and the Director thereof have refused to pay plaintiff said insurance, and on April 26, 1929, disputed plaintiff's claim to said insurance and disagreed with him concerning his rights to the same."

This allegation of the complaint was admitted by the answer. Under such circumstances, and in the absence of a timely objection to the complaint, the above should be deemed a sufficient averment of the presentation of due proof of total and permanent disability as of the date alleged. Upon the trial, the jury returned a verdict in favor of the plaintiff, fixing the date of total and permanent disability as of October 1, 1928. Upon this verdict a judgment was entered for the sum of $644, representing accrued monthly installments at the rate of $40.25 per month, beginning October 1, 1928. From the judgment thus entered, the government has appealed.

The assignments of error challenge the sufficiency of the testimony to establish total and permanent disability, and the right or power of the court to give judgment for installments accruing more than six months

prior to the date of the verdict. On the question of total and permanent disability, the testimony tends to prove that the appellee has suffered for a number of years from a disease known as psoriasis. A physician testified that this is a disease of the skin, of unknown origin; that it usually involves certain parts of the body, and is regarded as chronic; that it disappears at times, but is subject to recurrence; that it is supposed by some to be due to blood parasites, and by others to be of nerve origin; that there are several cases on record where infection has been found; that he himself did not consider the malady contagious, although it was so regarded by others; that the cure is more or less of an ephemeral nature; that in the majority of cases it can be cleared up in a month, but it sometimes takes six months or longer; that it is subject to recurrence, and there is no assurance that it will not come back; that the longest time he has known a person to be free from it was seven years; and that it usually returns in two or three months. The appellee testified that the disease first appeared in the form of a scale, about May, 1922; that it spread from his face to his scalp; that at times his scalp is a solid crust; that now and then it spreads to all parts of his body; that his arms are practically covered with it; that at times it heals up for a short time only, but there has always been a few spots left. On the question of his ability to work, he testified that he has been unable to perform manual labor for a number of years last past; that he attended school and took a business course in vocational training; that in 1926 he was employed in a bakery in a clerical capacity; that after two weeks of work he was discharged because the drivers objected to coming in contact with him; that he then took a civil service examination, and was employed in the post office in 1926 for a period of 1,-175 hours, and for about three days during the holidays in December of that year; that from October, 1927, to October, 1928, he was employed in the same capacity for 1,125 hours; that he was then discharged because his physical appearance was objectionable to other employees of the department; that since that time he has sought employment and has applied to numerous agencies to obtain employment, but has been unable to do so because of his appearance, and because others refuse to work or come in contact with him.

The testimony of the appellee as to his physical appearance, his efforts to obtain employment, and his inability to do so is fully corroborated by other testimony. The case thus presented is in some of its aspects a peculiar one. The appellee is physically able to follow a substantially gainful occupation continuously, but is unable to obtain employment, through no fault of his own, because others are unwilling to associate or come in contact with him. The question of disability is a practical one, and upon the facts above outlined we think a finding of total and permanent disability was warranted.

Thus, in Wood v. United States (D. C.) 28 F.(2d) 771, 772, the insured was subject to epileptic seizures. The court found that he was a young man of excellent physique and much more than ordinary intelligence; that in the intervals between his seizures he was quite able to pursue successfully any number of substantially gainful occupations; that there was no evidence of any mental or physical deterioration; that probably 90 per cent. of the time, or more, he was a normal, healthy young man; that his seizures came without warning and with no regularity, and with such frequency that as a matter of fact he could not find a job, or could not hold it if he found one. In reference to such a situation, the court said:

"The government urges that Wood is physically and mentally able to hold a position a very large percentage of the time, and that there is no real reason why employers should not employ him. At the same time, it is all too clear that employers will not in fact employ him. It may be superstition, it may be prejudice, it may be illogical, but the truth still remains that other men won't work with one who is apt to any time go off into an epileptic convulsion. So we are confronted with this situation: An insured, physically and mentally able to hold a job, cannot, because of his epilepsy, find, or ever hope to find, employment. Is there liability? * * *

"I am of the belief that when, by reason of physical or mental disability, the insured is compelled to drop out of the ranks of the workers of the world, and stand by the side of the road and watch the world go by, there is liability under the policy. The insured may not be fastidious as to his employment; if, as a matter of fact, he is able to do any honorable work, he is not disabled. But neither is he chargeable with circumstances over which he has no control; and, if employers will not employ epileptics, the soldier is confronted with a condition and not a theory, and he is totally disabled."

The appellant further contends that ultimate cure is reasonably certain, but this is problematic, to say the least. The probabili-

584

ties would seem to be the other way; but, in any event, the policy itself provides for such a contingency, because the insured may be called upon at any time to furnish proof satisfactory to the Director of the United States Veterans' Bureau of the continuance of his total permanent disability, and, if he fails to furnish such proof, all payments of monthly installments on account of total permanent disability shall cease, and all premiums thereafter falling due shall be payable in conformity with the policy.

The appellant also contends that the complaint failed to allege, and the proof failed to show, the receipt of due proof of total permanent disability by the Veterans' Bureau, from which it is argued that due proof was not made or furnished until the date of the trial, and that a judgment awarding benefits relating back to a date exceeding six months prior to the date of the verdict is erroneous. If it were a fact, as claimed by the government, that there was neither allegation nor proof of the receipt of due proof of total permanent disability, the defect would not only affect the amount of recovery, but the jurisdiction of the court would be entirely defeated, because the receipt of due proof of total permanent disability and a denial of the claim for insurance benefits by the Veterans' Bureau, or a disagreement in relation thereto, is a prerequisite to the exercise of jurisdiction by the courts. Manke v. United States (C. C. A.) 38 F.(2d) 624; Bernsten v. United States (C. C. A.) 41 F.(2d) 663; United States v. Burleyson (C. C. A.) 44 F. (2d) 502. For the like reason, the denial of liability by the government can have no such effect as is claimed for it by the appellee.

 As already stated, the policy expressly limits back payments to a date not exceeding six months from the receipt of due proof of total permanent disability, and we entertertain no doubt that this limitation is binding on both the Bureau and the courts. Were it not for a concession made by the government, it is not at all clear to us that the courts can give judgment for installments antedating the receipt of the due proof specified in the policy. The policy provides that payments may relate back to a date not exceeding six months prior to receipt of due proof; and the word "may" is usually permissive, not mandatory. This is especially true where, as here, it is followed in the same sentence by the word "shall." And, if the allowance of back installments is discretionary with the Bureau, as it seems to be, it is questionable, at least, whether that discretion

may be exercised by the court or jury. But, in view of the concession made by the government, we will not pursue the inquiry further.

For reasons heretofore stated, we are of opinion that the complaint contained a sufficient allegation of the presentation and receipt of due proof of total and permanent disability on January 22, 1929, and that allegation was admitted by the answer. Judgment was given for back installments to October 1, 1928, that is, for a period of less than six months prior to the receipt of the due proof. In other words, the six-month period runs from the date of the receipt of due proof, and not from the date of the verdict as claimed.

The judgment is therefore affirmed.